## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| Axios, Inc., | ) |
| | ) |
|     Plaintiff, | ) Case No. 1:15-CV-379 |
| | ) |
| vs. | ) |
| | ) |
| Thinkware, Inc., et al., | ) |
| | ) |
|     Defendants. | ) |

### O R D E R

This matter is before the Court on the motion to dismiss filed by Defendants Thinkware, Inc. and Kevin Eickmann. Doc. No. 11.[1] For the reasons that follow, Defendants' motion to dismiss is well-taken and is **GRANTED**.

### I. Background

Plaintiff Axios, Inc. ("Axios") presents claims against Defendant Thinkware, Inc. ("Thinkware") for breach of contract and breach of warranty arising out of the sale and/or licensing of allegedly defective human resources computer software. Additionally, Axios alleges that Defendant Eickmann, Thinkware's President, made certain fraudulent misrepresentations which induced it to purchase and/or license the alleged defective software. Axios is a Michigan corporation with its principal place of business in Grand Rapids, Michigan. Amended Complaint ¶ 1. Thinkware is an Ohio corporation with its principal place of business in Cincinnati, Ohio. Amended Complaint ¶ 2. Eickmann is a

---

[1] By order of the Court, Plaintiff Axios, Inc. filed an amended complaint to cure jurisdictional deficiencies in the original complaint. Doc. Nos. 17, 18. Since the amended complaint was filed only to correct jurisdictional defects, the parties have incorporated by reference their pleadings relating to dismissal of the original complaint so that they now pertain to dismissal of the amended complaint. Doc. No. 19.

citizen of the State of Ohio. Amended Complaint ¶ 3. The Court has subject matter in this case because there is complete diversity between Plaintiff and the Defendants and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a).

For purposes of Defendants' motion to dismiss, the following facts from the amended complaint are accepted as being true.

Axios provides payroll, human resources, employee benefits and workers compensation services to its clients. Amended Complaint ¶ 1. Axios requires significant computer resources and specialized software to provide these services. Amended Complaint ¶ 6. Axios approached Thinkware about utilizing Thinkware's Darwin software to meet its needs and the needs of its clients. Amended Complaint ¶¶ 9, 10, 11. Thinkware represented to Axios that Darwin software would meet Axios's needs and was compatible with Axios's other software, Microsoft Dynamics Great Plains Ver. 2010. Thinkware, and in particular, Eickmann, also represented that Darwin would enable Axios to provide its clients with web access to client and employee data. Thinkware also provided demonstrations of Darwin software which seemed to confirm its compatibility with Axios's other software. Amended Complaint ¶¶ 11-13.

Axios, however, had apparently heard rumors of lawsuits against Thinkware concerning problems converting to Darwin software. In March 2012, a representative of Axios emailed Thinkware about those rumors. Eickmann denied that there were any legal actions pending against Thinkware. At the time, however, there were lawsuits pending against Thinkware in Texas and New Mexico concerning Darwin software. Amended Complaint ¶¶ 14-16.

In any event, on August 6, 2012, Axios signed a "Thinkware, Incorporated End-User License Agreement." Amended Complaint ¶ 17. The Darwin software was installed on Axios's computer system on August 29, 2012. Amended Complaint ¶ 18. Axios began experiencing problems with the software soon thereafter.

In November 2012, the software began "locking up." Amended Complaint ¶ 20. In December 2012, Axios was unable to import payroll. Amended Complaint ¶ 21. Also in December 2012, Thinkware advised Axios that it would not be able to meet the deadline for the software conversion. Amended Complaint ¶ 21. Then, the software would not allow Axios to print checks and access certain data. Amended Complaint ¶ 22. Consequently, the conversion date for the implementation of the Darwin software had to be postponed. Id.

In January 2013, Axios and Thinkware had a conference call in which resolutions to the problems Axios was having with the software, as well as missing the conversion date, were discussed. Amended Complaint ¶ 23. Based on Thinkware's representations during the conference call concerning Darwin's capabilities, Axios elected to proceed with Darwin rather than seek out an alternative vendor. Amended Complaint ¶ 24.

In February 2013, the Darwin software was installed on Axios's network. Amended Complaint ¶ 25.[2] Axios continued to experience problems, however. There were login

---

[2] The sequence of events regarding the process of installing the software may make sense to a computer expert but is confusing to the Court. The amended complaint indicates that the software was first installed on the "system." Then there were problems with the "conversion" to the software. Then the software was installed on the "network." It seems to the Court that the process of installation of the software on the "system" would encompass both a "conversion" to the software as well as the installation of the software on the "network." In any event, the Court has set forth the sequence the way it is described in the amended complaint.

errors, systems issues, invoice issues, and push/pull data issues.  Id.  Axios notified Thinkware of all these problems and Thinkware assured Axios that the problems would be remedied.  Amended Complaint ¶ 26.  Nevertheless, the problems with the software persisted and, as a result, Axios lost a major client in August 2013.  Amended Complaint ¶ 27.  The software was still not functioning properly as late as December 2013.  Amended Complaint ¶ 28.

In March 2014, representatives from Axios and Thinkware had a face-to-face meeting in Cincinnati in which Axios's issues with the software were discussed.  Axios provided Thinkware with a detailed list of its problems and issues.  There was another face-to-face meeting to discuss these issues in October 2014.  Despite these meetings, in December 2014, Eickmann sent an email to an Axios employee purporting to be unaware of any problems Axios was experiencing with the software.  Amended Complaint ¶¶ 29-32.  Because of Thinkware's inability to provide software that could perform as represented, Axios terminated the license agreement on December 29, 2014.  Axios had to seek out another software vendor.  Amended Complaint ¶¶ 34, 36.

Axios claims substantial loses from Thinkware's alleged inability to provide functioning software.  Axios paid Thinkware licensing and consulting fees of approximately $225,000. Additionally, Axios lost its largest customer and incurred another $98,000 in costs to purchase an additional server and for additional training.  Amended Complaint ¶¶ 35-38.

The license agreement contains several limitations on warranties and provides its own statute of limitations for bringing claims arising out of the agreement.  Notably, the agreement provides an express warranty that the software would perform substantially as

4

described for a period of 120 days from the effective date of the agreement. Doc. No. 1, at 15 (License Agreement ¶ 14(a)). The agreement disclaims implied warranties of merchantability and fitness for a particular purpose. Id. Indeed, the agreement places on the customer the responsibility for deciding whether the software is suitable for its needs and essentially denied warranting that the software would work at all for the customer. Id. at 15-16 (License Agreement ¶¶ 14(b)-(e)). The agreement states that the software was provided "as is." Id. at 16 (License Agreement ¶ 14(c)). Finally, the agreement provides that "[a]ny lawsuit arising out or related to this Agreement must be brought no later than one (1) year after cause of action [sic] accrues or it shall be forever barred." Id. at 17 (License Agreement ¶ 15(b)).

Axios filed its complaint against Thinkware on May 20, 2015. Thinkware, however, contends in its motion to dismiss that Axios's breach of contract and breach of warranty claims are barred by the one-year statute of limitations set forth in the license agreement. Additionally, Thinkware alleges that Axios has not sufficiently pled its fraudulent misrepresentation claim, both as to the elements of the claim and the requirement under Rule 9(b) to plead fraud with particularity.

The Court takes up these arguments further below.

## II. Standard of Review

A motion to dismiss for failure to state a claim operates to test the sufficiency of the complaint. The court must construe the complaint in the light most favorable to Plaintiff, and accept as true all well-pleaded factual allegations. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Roth Steel Products v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir.

1983). The court need not accept as true legal conclusions or unwarranted factual inferences. Lewis v. ACB Business Servs., Inc., 135 F.3d 389, 405 (6th Cir. 1998).

The complaint, however, must contain more than labels, conclusions, and formulaic recitations of the elements of the claim. Sensations, Inc. v. City of Grand Rapids, 526 F.3d 291, 295 (6th Cir. 2008) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The factual allegations of the complaint must be sufficient to raise the right to relief above the speculative level. Id. Nevertheless, the complaint is still only required to contain a short, plain statement of the claim indicating that the pleader is entitled to relief. Id. (citing Erickson v. Pardus, 551 U.S. 89, 93 (2007)). Specific facts are not necessary and the pleader is only required to give fair notice of the claim and the grounds upon which it rests. Id. To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Mere conclusions, however, are not entitled to the assumption of truth. Id. at 678-89. A claim is facially plausible if it contains content which allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. at 678. Plausibility is not the same as probability, but the complaint must plead more than a possibility that the defendant has acted unlawfully. Id. If the complaint pleads conduct which is only consistent with the defendant's liability, it fails to state a plausible claim for relief. Id.

A court may grant a Rule 12(b)(6) motion if the allegations in the complaint affirmatively show that the claim is barred by the statute of limitations. Cataldo v. U.S. Steel Corp., 676 F.3d 542, 547 (6th Cir. 2012).

III. Analysis

The Court first notes that, at least as to Axios's breach of contract and breach of warranty claims, there is a choice-of-law clause calling for the application of Ohio law to the agreement. Doc. No. 1, at 17 (License Agreement ¶ 17). Moreover, Axios does not appear to dispute that Ohio law applies to its fraudulent misrepresentation/fraudulent inducement claim. The Court, therefore, will assume that Ohio law applies to the parties' dispute.

A. Breach of Contract/Breach of Warranty

Axios's breach of contract and breach of warranty claims are related in that Axios alleges that Thinkware failed to provide software that it was able to use on its computer system and failed to conform to representations as to its functionality. Thinkware contends, however, that these claims are barred by the one-year statute of limitations set forth in the license agreement. According to Thinkware, Axios's claims accrued no later than December 2013, when Axios alleges that the software was still not functioning properly. Since the complaint was filed more than one year after December 2013, Thinkware argues that these claims are barred by the statute of limitations.

Axios, on the other hand, contends that the fraudulent concealment doctrine applies to the statute of limitations analysis. According to Axios, Thinkware fraudulently concealed problems with the software by denying that there were any lawsuits related to the software and by repeatedly, but falsely, representing that the problems with the software could be remedied. Under Axios's theory, these claims did not accrue until December 2014, when it discovered that the Darwin software simply did not work. Since the complaint was filed within one year of December 2014, Axios argues that these claims are timely.

7

The Court concludes, however, that the fraudulent concealment doctrine does not apply in this case and that Axios's claims for breach of contract and breach of warranty accrued no later than August 2013.  This is the date, according to the complaint, on which the "Darwin software was still not functioning."   Amended Complaint ¶ 27.  Since the complaint was filed in May 2015, the breach of contract and breach of warranty claims are barred by the one-year statute of limitations set forth in the license agreement.

Initially the Court notes that although Axios's claims arise out of a software license agreement, there appears to be a consensus among courts that such agreements constitute transactions involving the sale of "goods" under the Uniform Commercial Code ("UCC"). See, e.g., State v. Perry, 697 N.E.2d 624, 629 (Ohio 1998)("[A] consumer software licensing agreement is generally treated as a contract between the copyright owner or 'seller' of the software and the licensee or 'buyer' and is therefore governed by general contract law and the U.C.C.")(dicta); Arlington Elec. Constr. v. Schindler Elevator Corp., No. L-91-102, 1992 WL 43112, at *5 (Ohio Ct. App. Mar. 6, 1992)("Regardless of software's specific form or use, it seems clear that computer software is considered by courts to be a tangible and moveable item rather than an intangible idea and therefore qualifies as a good under Article 2 of the Uniform Commercial Code."); Tibco Software, Inc. v. Gordon Food Serv., Inc., No. 1:03-CV-25, 2003 WL 21683850, at *5 (W.D.Mich. July 3, 2003)(sale or lease of software typically considered as a sale of goods under UCC even though license agreement contains some service elements); NMP Corp. v. Parametric Tech. Corp., 958 F. Supp. 1536, 1542 (N.D.Okla.1997) (software license agreement sale of goods under UCC)(collecting cases); Dealer Mmgt Sys., Inc. v. Design Auto. Group, Inc., 822 N.E.2d 556, 560 (Ill. Ct. App. 2005)("A sampling of decisions from various jurisdictions

shows that courts have generally recognized that computer software qualifies as a 'good' for purposes of the UCC.")(collecting cases). Accordingly, the Court concludes that Ohio's version of the UCC applies to Axios's breach of contract and breach of warranty claims.

While the UCC specifically establishes a four-year statute of limitations for breach of contract claims, Ohio Rev. Code § 1302.98(A) (UCC § 2-725(1)), the parties may agree to a statute of limitations of not less than one year. Id. In this case, the parties have, consistent with the UCC, agreed to a one-year statute of limitations for filing claims arising out of the license agreement. The UCC then explains when a claim for breach of contract accrues: "A cause of action accrues when the breach occurs, regardless of the aggrieved party's knowledge of the breach." Ohio Rev. Code § 1302.98(B) (UCC § 2-725(2)). A claim for breach of contract is generally considered to accrue under § 2-725(2) when the seller delivers non-conforming goods to the buyer. Allen v. Andersen Windows, Inc., 913 F. Supp.2d 490, 505-09 (S.D. Ohio 2012); Safeco Ins. Co. of Am. v. CPI Plastics Group, Ltd., 625 F. Supp.2d 508, 521 (E.D. Mich. 2008); Long Island Lighting Co. v. Transamerica Delaval, Inc., 646 F. Supp. 1442, 1454 (S.D.N.Y. 1986). In other words, § 2-725(2) does not provide a discovery rule in which a claim does not accrue until the buyer knows or should have known of a defect in the goods. Lutz v. Chesapeake Appalachia, LLC, 717 F.3d 459, 474 (6th Cir. 2013); Allen, 913 F. Supp.2d at 506; Baker v. DEC Int'l, 580 N.W.2d 894, 898 n.17 (Mich. 1998)("We agree that the plain language of [2-725(2)] renders a buyer's actual knowledge (or lack thereof) of defects totally irrelevant for the purposes of the accrual of the cause of action."). Additionally, "[a] breach of warranty occurs when tender of delivery is made." Ohio Rev. Code § 1302.98(B) (UCC § 2-725(2)).

9

In this case, Axios's breach of contract and breach of warranty claims accrued when Thinkware delivered the allegedly defective software. According to the amended complaint, delivery occurred on either of two dates, both of which are outside of the one-year limitations period. The first is August 29, 2012, when the software was installed on Axios's "system." Amended Complaint ¶ 18. The second is February 2013, when the software was installed on Axios's "network." Amended Complaint ¶ 25. Thus, according to the facts alleged in the amended complaint, Thinkware delivered non-conforming goods to Axios no later than February 2013. Since the original complaint in this case was filed in May 2015, Axios missed the statute of limitations by over a year.

Even giving Axios the benefit of a discovery rule, which the Court reiterates is not available under 2-725(2), Axios admits that it knew no later than August 2013 that the software was non-conforming. Amended Complaint ¶ 27 ("[A]s of August, 2013, the Darwin software was still not functioning."). So even with a discovery rule, Axios's breach of contract and breach of warranty claims are untimely. The Court notes further the fact that Thinkware allegedly promised but failed to remedy the defective software does not toll or extend the statute of limitations. Adams v. Primax Window Co., Inc., No. CA99-01-004, 1999 WL 601021, at *3 (Ohio Ct. App. Aug. 9, 1999)("[U]nder the law of Ohio, the statute of limitations for a UCC claim does not toll while an innocent purchaser relies on the seller's promise to repair."). This is particularly true where, as in this case, the buyer and seller are sophisticated business entities fully capable of protecting their own interests. E.g., Standard Alliance Ind., Inc. v. Black Clawson Co., 587 F.2d 813, 821-22 (6th Cir. 1978) (seller's promises to repair defective machine did not toll statute of limitations where parties were corporate entities "well able to look out for themselves").

10

Axios, however, argues that the statute of limitations was tolled due to Thinkware's alleged misrepresentations and/or fraudulent concealment of the capabilities of the Darwin software.  The Court notes that two of the paragraphs Axios cites in support of its tolling argument concern an alleged misrepresentation about pending lawsuits against Thinkware. Doc. No. 14, at 4 (citing ¶¶ 14 and 15 of the Amended Complaint).  This alleged misrepresentation was allegedly made, however, in March 2012, well before the delivery of the defective software and, indeed, well before there was even an agreement between Axios and Thinkware.  This alleged misrepresentation, therefore, cannot have had any effect on the statute of limitations for bringing claims arising out of the agreement.  The other alleged misrepresentations cited by Axios (¶¶ 24 and 25 of the Amended Complaint) concern alleged reassurances given by Thinkware in January 2013 that the Darwin software was capable of meeting Axios's performance requirements.  In substance, however, this argument is only another way of saying that the statute of limitations should be tolled because Thinkware promised to remedy the defective software.  As stated above, however, the seller's promise to repair non-conforming goods does not toll the statute of limitations.

Moreover, while Axios alleges that Thinkware's misrepresentations caused it to forego finding another software vendor, it does not allege that Thinkware's misrepresentations caused it to forego filing suit against Thinkware.  See Allen, 918 F. Supp.2d at 510-11 (in order to estop defendant from relying on a statute of limitations defense, plaintiff must plead facts showing that defendant misled plaintiff as to the limitations period or otherwise caused the plaintiff to forego filing suit).  The fact that Thinkware allegedly concealed defects in the software does not equitably toll the statute

of limitations. Id. In any event, as already stated, Axios admits that it knew the software was defective no later than August 2013. The fact that in December 2014 Axios finally threw up its hands and quit working with Thinkware to fix the problems does not equitably extend the accrual date of its claims because it knew more than a year earlier that the software was defective. See Lutz, 717 F.3d at 475 (in order for estoppel to extend the statute of limitations, the plaintiff must show that the defendant's conduct prevented the plaintiff from discovering the factual basis for the claim); see also Giraud v. Quincy Farm & Chem., 6 P.3d 104, 111 (Wash. Ct. App. 2000)("Fraudulent concealment cannot exist if a plaintiff has knowledge of an alleged defect.").

Finally, Axios argues that the license agreement is a divisible contract apparently because it called for Axios to pay several different fees, such as an annual fee, a maintenance fee, and service fees, and thus there may be several different limitations periods depending on when Thinkware breached its obligations under the agreement. The license agreement is not a divisible contract, however. A divisible contract contemplates that one party is responsible for several distinct and separate items and that the price is apportioned to each item. Lutz, 717 F.3d at 467. "Divisibility is a general technique by which a court can mitigate the harshness of a rule that bars a party from enforcing an agreement by apportioning the performances into corresponding pairs of part performances and then enforcing the agreement as to only one part[.]" DePugh v. Mead Corp., 607 N.E.2d 867, 873 (Ohio Ct. App. 1992). "A factor in determining whether a contract is entire or severable is whether the parties reached an agreement regarding various items as a whole or whether the agreement was reached regarding each item as a unit." Lutz, 717 F.3d at 467.

In this case, the license agreement clearly is an indivisible contract. The agreement plainly states that Thinkware would provide a license to use the software to Axios in exchange for an annual maintenance fee. Doc. No. 1, at 11-12 (License Agreement ¶¶ 5-7). In fact, it appears that providing the license to Axios was Thinkware's only obligation under the agreement. Moreover, there are no itemized costs for various services provided in connection with the license. The agreement states that product support is included in the agreement as part of the annual maintenance fee. Id. (License Agreement ¶ 8). There is a provision for additional fees for services provided outside the scope of normal support, such as for data restoration and training, that arguably is divisible from the rest of the agreement, but whether Thinkware failed to provide additional or extraordinary services to Axios is not an issue in the case. The totality of the license agreement indicates that it is not a divisible contract. Compare to Material Contr., Inc. v. Donahue, 235 N.E.2d 525, 527-28 (Ohio 1968) (contract was divisible where each of lessor's obligations corresponded to a fee to be paid by lessee). Consequently, this argument does not save Axios from being barred by the contractual statute of limitations.

In summary, it is clear from the face of the complaint that Axios's breach of contract and breach of warranty claims are untimely pursuant to the one-year statute of limitations set forth in the license agreement. Accordingly, Thinkware's motion to dismiss these claims is well-taken.

### B. Fraudulent Misrepresentation/Fraudulent Inducement

Axios also claims that it was fraudulently induced to enter into the license agreement by misrepresentations made by Thinkware and Eickmann about the Darwin software's capabilities as well as by misrepresentations about whether any lawsuits were pending

13

against Thinkware concerning Darwin.  Defendants contend, however, that Axios has not pled its fraud claims with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.  Defendants also point out that Axios's claim that Thinkware misrepresented Darwin's capabilities is contradicted by the license agreement, which makes the licensee responsible for determining that the software satisfies its needs and uses.  See Doc. No. 1, at 16 (License Agreement ¶ 14(e)).

As an initial matter, the Court agrees with Defendants that Axios cannot base a fraud claim on alleged misrepresentations that the software was suitable to meet Axios's needs.  As Defendants correctly observe, the license agreement specifically placed on Axios the duty to assess whether the software would function properly on its system:

> It is the intent and agreement of Thinkware and Customer that Customer make its own independent determination, prior to the execution of this Agreement, of the ability of the Software to meet the needs and intended uses by the Customer. **Customer acknowledges and represents that prior to the execution of this Agreement, Customer has had the opportunity to review the Software and has independently determined that the Software satisfies the Customer's needs and intended uses.**  Thinkware makes no warranties nor representations that the Software will satisfy the Customer's needs and intended uses, *and any prior communications or correspondence by Thinkware or any of its agents, employees, consultants that the Software will satisfy the Customer's needs and intended uses are null and void.*

Id. (bold emphasis in original; italicized emphasis added).  As can be seen, not only did the license agreement make Axios responsible for making sure the software would function properly for it, Thinkware specifically disclaimed any prior assurances that the software was suitable for Axios.  It is well-settled that a fraud claim cannot be based on an alleged fraud that is directly contradicted by a signed writing.  Marion Prod. Credit Ass'n v. Cochran, 533 N.E.2d 325, 334 (Ohio 1988); Fontbank, Inc. v. CompuServe, Inc., 742 N.E.2d 674, 680 (Ohio Ct. App. 2000).  Here, Defendants' alleged misrepresentations about the

14

performance capabilities of the software and its suitability for Axios's use are directly contradicted by the license agreement placing those responsibilities on Axios. Moreover, the license agreement's disclaimer of any prior representations about the software negates any claim that Axios justifiably relied on those alleged misrepresentations. See Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc., 7 F. Supp.2d 954, 963-64 (N.D. Ohio 1998) ("No party to a contract can claim [reasonable] reliance upon any representation which is expressly disclaimed by another party . . . . After all, in disclaiming all external representations, one party effectively warns another that such representations are worthless."). Accordingly, Thinkware is entitled to dismissal of Axios's fraudulent misrepresentation/fraudulent inducement claim to the extent it is based on alleged misrepresentations concerning the performance capabilities of the software and its suitability for Axios's computer system.

Additionally, Axios could not have reasonably relied on alleged misrepresentations about whether lawsuits were outstanding against the Darwin software. Axios's complaint admits that it was aware or had information that lawsuits *were* pending against Thinkware and the software at the time. Amended Complaint ¶ 14. In other words, the complaint shows that Axios was in possession of information directly contrary to the alleged misrepresentation. Under those circumstances, Axios cannot establish justifiable reliance on the alleged misrepresentation as a matter of law:

> Ohio law requires a person to exercise proper vigilance in his dealings, so that where one is put on notice as to any doubt to the truth of the representation, the person is under a duty to reasonably investigate before reliance thereon.

Finomore v. Epstein, 481 N.E.2d 1193, 1196 (Ohio Ct. App. 1984). Axios was on notice of lawsuits against Thinkware and has not pled facts showing that it conducted a

15

reasonable investigation into Defendants' representations to the contrary. Accordingly, Axios could not as a matter of law have justifiably relied on Defendants' alleged misrepresentations about pending lawsuits in deciding to purchase the Darwin software.

In summary, for all of the reasons stated above, Defendants are entitled to dismissal of Axios's fraudulent misrepresentation/fraudulent inducement claim.

### IV. Motion to Amend

Axios requests permission to file an amended complaint in the event the Court finds any of its claims insufficiently pled. Axios, however, has not filed a copy of any proposed amended complaint it would intend to file. Axios is not entitled to an advisory opinion on the deficiencies of its complaint. Begala v. PNC Bank, Ohio, Nat'l Ass'n, 214 F.3d 776, 783-87 (6th Cir. 2000). Accordingly, leave to file an amended complaint is denied.

### Conclusion

For the reasons stated herein, Defendants' motion to dismiss is well-taken and is **GRANTED.** The complaint is **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED**

Date August 26, 2015            s/Sandra S. Beckwith
                                                 Sandra S. Beckwith
                                         Senior United States District Judge